```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**SHELDON CANNON**                                        **CIVIL ACTION**

**VERSUS**                                                **NO. 05-5558**

**MONSANTO COMPANY**                                      **SECTION "B"(2)**

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Rec. Doc. No. 47). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.**

## *BACKGROUND*

Plaintiff Sheldon Cannon was hired as a Unit Specialist/Technician to work in the GI (Glyphosate Intermediate) Rail Unit of Monsanto's chemical manufacturing plant located in Luling, Louisiana in June 1999. His responsibilities included working on instrumentation, performing electrical work in the re-wiring of instruments and pumps, general Unit maintenance duties, and operating the board in the control room in order to make sure the plant reactor was operating correctly.

On August 7, 2001, Plaintiff visited Dr. Raymond, a board certified physician in internal medicine. Plaintiff reported that he was suffering from low back pain, swelling in both feet, shortness of breath, sleep apnea, and blood in his stool every

1

other month.  Dr. Raymond's diagnosis was sleep apnea and hypertension.  Upon Dr. Raymond's recommendation, Plaintiff underwent a sleep study to evaluate his potential sleep apnea.  A split-test sleep study was performed.  The sleep study report revealed that a CPAP (constant positive airwave pressure) device did not eliminated all hypopnea events, but did prevent significant arousals or oxygen desaturations.  Dr. Raymond did not place Plaintiff under work restrictions and Plaintiff began to use the CPAP machine.

On August 20, 2001, Plaintiff was promoted from a Technician I to a Technician II position and received a pay increase from $20.26 per hour to $21.34 per hour. In 2002, Mr. Mark Cavenaile replaced Mr. Wahlgren as supervisor.  Plaintiff testified that Mr. Cavenaile would harass him about his weight.

On October 7, 2002 Unit Engineer Siamak Hatamian documented Plaintiff sleeping on the job.  Plaintiff, however, contends that he was not sleeping; rather he had his eyes closed while thinking about something.  The second reported sleeping on the job incident took place in February 2003.  Plaintiff claims that he had closed his eyes and pretended to be asleep as Mr. Carlos Deloche approached.  Plaintiff does not dispute that Mr. Deloche believed that he had caught him sleeping, nor does he believe that Mr. Hatamian believed otherwise.  Plaintiff signed a disciplinary document on February 20, 2003.  On November 19,

2003, Ms. Rosa Jolet documented that Plaintiff had been caught sleeping in the control room, but Plaintiff does not remember the incident as described by Ms. Jolet.  Ms. Jolet subsequently documented and reported this incident to Mr. Cavenaile.

Dr. Swift, Monsanto's Company doctor, examined Plaintiff on or about December 9, 2003 and concluded that Plaintiff's sleep apnea was under control. On December 15, 2003, Plaintiff appeared for an examination following an automobile accident.  During the visit, Dr. Raymond noted that Home Healthcare Supply should check Plaintiff's CPAP machine.  Dr. Raymond later discussed Plaintiff's sleep apnea condition with Monsanto's Company doctor, Dr. Douglas Swift, advising him that the sleep apnea was not a problem if Plaintiff continued to use the CPAP machine.

In early 2004, Mr. Ralph Zamora replaced Mr. Cavenaile as Unit Supervisor, and Mark Coffee assumed the role as First Line Supervisor.  On May 22, 2004, Mr. Rany Firmin, another engineer working in the Unit, observed Mr. Cannon asleep at the control board and reported this occurrence on May 27, 2004.  Plaintiff met with Mr. Zamora who suspended him.  Plaintiff did not expressly agree that he had been sleeping.  Mr. Zamora terminated Plaintiff on June 2, 2004.

Dr. Raymond later explained to Plaintiff's attorney that sleep apnea was not a disability because it could be controlled by use of the CPAP machine.  On February 2, 2005, Plaintiff

complained of sleep apnea and cited an incident of "nodding off". Per the instruction of Dr. Raymond, another sleep study conducted on March 9, 2005 revealed that Plaintiff was a mouth breather, so he was fitted with a full-face mask for the CPAP study.  As a result of the study, it was found that an increased machine pressure setting of 14 cm eliminated all obstructive events, including snoring.

On March 15, 2005, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission.  On June 30, 2005, the EEOC issued a Dismissal and Notice of Rights finding no cause to credit Plaintiff's charges of disability or race discrimination.

Defendant contends that Plaintiff's claim of disability fails as a matter of law because sleep apnea does not rise to the level of a protected disability.  Assuming arguendo that Plaintiff's condition rises to the level of a protected disability, Plaintiff's termination of his employment for on-the-job misconduct (sleeping on the job) does not constitute a violation of the ADA even if caused by a disability.

Defendant asserts that Plaintiff has no direct evidence supporting his claim of race-based discrimination because he cannot demonstrate that similarly situated Caucasian employees received preferential treatment.  Specifically, no evidence supports that those alleged by Plaintiff to be similarly situated

were reported sleeping on the job the same number of times.

Reaching outside of the scope of merit in this case, Defendant claims that Plaintiff has failed to contest Defendant's Statement of Uncontested Material Facts, an assertion with which this Court does not agree.  Defendant also argues that Plaintiff has not produced sufficient evidence to state a prima facie claim of disability discrimination under the ADA.

Plaintiff contends that his former employer has discriminated against him on the basis of his disability and race.  Plaintiff's race-based discrimination claims relies upon the comparison of four Caucasian co-workers whom Plaintiff has identified as having been reported for sleeping on the job without being terminated.  Plaintiff points to affidavits as establishing that the supervisors at Monsanto went out of their way to ask other workers about Plaintiff sleeping but did not do this in case of white workers.  Plaintiff highlights that Defendant may have chosen to look the other way when Caucasian workers slept and yet did not afford the same treatment to Plaintiff.

## Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law.  Fed. R. Civ. P. 56©); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir. 1998).  The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  *Id*.  The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512.  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).  In the instant matter, Plaintiff must present an issue of material as to every one of the essential elements of each of his claims on which he bears the burden of proof at trial.  *Celotex,* 477 U.S. at 322; *see also Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1444 (5th Cir. 1993).

***DISCUSSION***

**A.   Disability-Based Discrimination**

The Americans with Disabilities Act of 1990 ("ADA") defines a physical impairment that "substantially limits on or more. . . major life activities" as a "disability." 42 U.S.C. §12102(2)(A); *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 187, 122 S.Ct. 681, 686 (2002).  In order to determine whether an impairment constitutes a "disability," the question of whether the impairments prevented or restriction the performance of tasks that are of central importance to most people's daily lives must be asked.  *Toyota*, 534 U.S. at 187.  The mere submission of a medical diagnosis of an impairment is insufficient.  *Id.* at 184. An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person.  *Id.* at 199.  The ability to compensate for the impairment or take corrective measures factors into this analysis.  *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999).

A plaintiff alleging discrimination under the ADA must first establish a prima facie case of discrimination, establishing that: (1) he is disabled or is regarded as disabled, (2) he is qualified for the job, (3) he was subjected to an adverse employment action on account of his disability, and (4) he was replaced by or treated less favorably than non-disabled employees.  Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.;  Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. §12101 et seq.  The burden then shifts to

employer to articulate legitimate, non-discriminatory reasons for its employment action.  If the employer meets this burden, the presumption of intentional discrimination disappears, but Plaintiff may still prove disparate treatment by, for example offering evidence demonstrating that employer's explanation is pre-textual.  *Raytheon Co. v. Hernandez*, 540 U.S. 44, 124 S.Ct. 513 (2003); 42 U.S.C.A. § 12101.

Defendant highlights that courts are split as to whether sleep apnea should be considered a disability.  Defendant cites *Taylor v. Blue Cross and Blue Shield of Texas, Inc.*, as support for the proposition that sleep apnea does not constitute a disability.  55 F.Supp.2d 604 (N.D. Tex. 1999) (granting summary judgment dismissal of an ADA claim because sleep apnea was not a disability where evidence demonstrated that condition could be controlled through the use of a CPAP machine prescribed by Plaintiff's treating physician).  However, the facts demonstrate the existence of a factual dispute as to whether or not the CPAP machine had been sufficient for Plaintiff, given the fact that his physician later found by a second sleep study that Plaintiff was a "mouth-breather" and should wear a **full-face mask** and utilize an increased machine pressure.  This determination was made on March 9, 2005, both after Plaintiff had been terminated and after Dr. Raymond had asserted on numerous occasions that Plaintiff's sleep apnea did not constitute a disability if the CPAP initially prescribed was used.  The law requires an individual analysis of whether an impairment "substantially

limits on or more. . . major life activities." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 187, 122 S.Ct. 681, 686 (2002).  While corrective measures should be taken into account with this analysis, the effectiveness of Plaintiff's CPAP should be questioned.  This inconsistency demonstrates the existence of a factual dispute.  In fact, the Eastern District of Louisiana has ruled that whether an ADA Plaintiff's sleep apnea constitutes a disability under the ADA is a question of fact. *Russo v. Jefferson Parish Water Dept.*, 1997 WL 695602 (E.D.La 1997).  If this issue of fact is in dispute and material, the grant of summary judgment would be inappropriate.

    Defendant asserts that even if Plaintiff's sleep apnea condition rises to the level of ADA protected disability, Plaintiff's sleeping on the job constitutes inexcusable misconduct, even if caused by an physical disability.  The ADA prohibits employment discrimination against disabled persons, on the basis of a disability, when the disabled person can perform the essential functions of the job with reasonable accommodation, if necessary. 42 U.S.C. § 12101, et seq.; La.Rev.Stat.Ann., §46:2254; *Hypes on Behalf of Hypes v. First Commerce Corp.*, 134 F.3d 721, 726-27 (5th Cir. 1998); *Burch v. Coca-Cola Co.*, 119 F.3d 305 (5th Cir. 1997).  The employee bears the burden of proving that the employer's actions were motivated by the considerations prohibited by the statute.  *Hypes,* 134 F.3d at 726; *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir. 1995).

Plaintiff's complaint alleges that Plaintiff was terminated for sleeping on the job even though he had been diagnosed with a sleep apnea condition. The ADA claim related evidence presented supports that Plaintiff was terminated for sleeping on the job. Even if sleeping on the job is linked to his disability, Plaintiff is not a "qualified individual with a disability," which means Plaintiff is not able to perform the essential functions of the safety-sensitive job. 42 U.S.C. § 12112; *Hypes*, 134 F.3d at 726. Staying awake is an essential function of Plaintiff's former job, which involves, inter alia, performing electrical work and monitoring the plant reactor. Despite the factual dispute concerning whether sleep apnea constitutes a disability, the fact that the sleep apnea caused Plaintiff to sleep on the job removes ADA protection. For this reason, the ADA-based claim does not survive summary judgment.

**B. Race-Based Discrimination**

In a Title VII disparate treatment case, the plaintiff bears the burden of establishing intentional discrimination by the employer. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). In the absence of direct evidence that discrimination has taken place, Plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *Id.* at 254. In order to establish a prima facie case of race-based discrimination under Title VII, a plaintiff must show that he: "(1) belongs to a protected group; (2) was qualified for his position; (3) was dismissed or suffered an adverse employment

10

action; and (4) was replaced with a similarly qualified person who was not a member of the employee's protected group" or (4) "in the case of disparate treatment, shows that others similarly situated were treated more favorably." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Preston v. Texas Dept. of Family and Protective Services*, 222 Fed.Appx. 353 ,358 (5th Cir. 2007). In order to rebut the inference, the employer must articulate a legitimate, non-discriminatory reason for the challenged action. *Burdine,* 450 U.S. at 254. If the defendant has presented evidence of a legitimate motivation, the plaintiff retains the burden of persuasion regarding intentional discrimination. *Id*. at 256.

Plaintiff claims his employer discriminated against him by terminating him for sleeping on the job while treating others who were similarly more leniently. He further avers that his eyes were closed in connection with the October 7, 2002 incident, he had pretended to be asleep with regard to the February 20, 2003 incident, and admits that he may have nodded off with regard to the May 22, 2004 incident. Even if Plaintiff's supervisors were mistaken in their belief that he was actually sleeping, an honest but mistaken belief stands as a legitimate non-discriminatory reason for adverse employment action. *Little v. Republic Refining Co., Ltd.,* 924 F.2d 93, 97 (5th Cir. 1991); *Singh v. Shoney's, Inc.,* 64 F.3d 217, 219 (5th Cir. 1995). Further, Plaintiff must prove that each of the employer's stated reasons for termination serve as pre-text. *EEOC v. Texas Insruments, Inc.* 100 F.3d 1173,

1180 (5th Cir. 1996)(*quoting Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir. 1996).

Plaintiff alleges that Caucasian co-workers were "similarly situated," yet treated differently from Plaintiff under circumstances very similar to his own.  Defendant highlights that four Caucasian workers were caught sleeping and not terminated: Audie Frilot, Will Sigmon, Thad Torres, and Cathy Torres. Defendant highlights that these workers were not similarly situated because their infractions only involved single offenses for each of these individuals.  Plaintiff further states that the supervisors at Monsanto went out of their way to ask other workers about Plaintiff sleeping, but did not do this in the case of Caucasian workers.  In fact, the affidavit of Audie Frilox[1] reveals testimony that many of the individuals slept on the job on more than one occasion, while supervisory personnel witnessed this.  Audie Frilox even admits to not having been reprimanded for these actions.  The affidavit of Tim Simon also reveals supervisor practices used to wake up other sleeping employees rather than invoke disciplinary action.

Out of the prima facie elements for disparate treatment, Plaintiff has established that he belonged to a protected group, was arguably qualified for his position, and was dismissed or suffered an adverse employment action.  The fourth element of establishing that the misconduct for which Plaintiff was

---

[1] Audie Frilot is a Caucasian worker cited once for sleeping on the job.

discharged was nearly identical to that engaged in by an employee of another race is established with the use of affidavits. Defendant's assertion that the number of wrongful acts were different as illustrated through the single citations of the four Caucasian employees does not overcome the accusation supported by evidence that the supervisor refused to discipline transgressions of Caucasian employees. Therefore, a material factual dispute exists as to whether the Caucasian employees were similarly situated. Defendant cites *Nzeda v. Shell Oil Co.*, but this case supports the proposition that **Plaintiff's** self-serving testimony that the defendant administration failed to investigate other employees was nothing more than a conclusory allegation. 228 Fed. Appx. 375 (5th Cir. 2007) (emphasis added). In the instant matter, Plaintiff presents affidavits of others, including one Caucasian worker whom Defendant alleges is not similarly situated, to support his claim. Moreover, the assertions made, in particular those made by Tim Simon, designate specific facts showing that there is a genuine issue for trial. *See Harris v. Harvey,* 2006 WL 870641 *5 (W.D.Tex. 2006). Therefore, Plaintiff's race-based discrimination claim survives summary judgment.

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART,** allowing the race-based discrimination claim to proceed.

1/25/08

13