UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHELDON CANNON                                          CIVIL ACTION

VERSUS                                                  NO. 05-5558

MONSANTO COMPANY                                        SECTION "B"(2)

ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment seeking dismissal of the race discrimination Title VII complaints of Plaintiff (Rec. Doc. No. 71). After review of the pleading and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment is **DENIED.**

*BACKGROUND*

Plaintiff Sheldon Cannon was hired as a Unit Specialist/Technician to work in the GI (Glyphosate Intermediate) Rail Unit of Monsanto's chemical manufacturing plant located in Luling, Louisiana in June 1999. His responsibilities included working on instrumentation, performing electrical work in the re-wiring of instruments and pumps, general Unit maintenance duties, and operating the board in the control room in order to make sure the plant reactor was operating correctly.

On August 20, 2001, Plaintiff was promoted from a Technician I to a Technician II position and received a pay increase from $20.26 per hour to $21.34 per hour. In 2002, Mr. Mark Cavenaile

1

replaced Mr. Wahlgren as supervisor. Plaintiff testified that Mr. Cavenaile would harass him about his weight.

On October 7, 2002 Unit Engineer Siamak Hatamian documented Plaintiff sleeping on the job. Plaintiff, however, contends that he was not sleeping; rather, he had his eyes closed while thinking about something. The second reported sleeping on the job incident took place in February 2003. Plaintiff claims that he had closed his eyes and pretended to be asleep as Mr. Carlos Deloche approached. Plaintiff does not dispute that Mr. Deloche believed that he had caught him sleeping, nor does he believe that Mr. Hatamian believed otherwise. Plaintiff signed a disciplinary document on February 20, 2003. On November 19, 2003, Ms. Rosa Jolet documented that Plaintiff had been caught sleeping in the control room, but Plaintiff does not remember the incident as described by Ms. Jolet. Ms. Jolet subsequently documented and reported this incident to Mr. Cavenaile.

In early 2004, Mr. Ralph Zamora replaced Mr. Cavenaile as Unit Supervisor, and Mark Coffee assumed the role as First Line Supervisor. On May 22, 2004, Mr. Rany Firmin, another engineer working in the Unit, observed Mr. Cannon asleep at the control board and reported this occurrence on May 27, 2004. Plaintiff met with Mr. Zamora who suspended him. Plaintiff did not expressly agree that he had been sleeping. Mr. Zamora terminated Plaintiff on June 2, 2004.

2

On March 15, 2005, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission. On June 30, 2005, the EEOC issued a Dismissal and Notice of Rights finding no cause to credit Plaintiff's charges of disability or race discrimination.

On November 14, 2007, Defendant filed a Motion for Summary Judgment seeking the dismissal of the Plaintiff's disability and race discrimination claims. Included in Plaintiff's opposition to the Motion for Summary Judgment, were the affidavits from two former Monsanto employees, Mr. Tim Simon and Mr. Audie Friloux, which influenced the Court's decision to dismiss Plaintiff's disability discrimination claim yet deny summary judgment on the Title VII race discrimination claim. The affidavits demonstrated the presence of a genuine issue of material fact as to whether supervisors at Monsanto consistently invoked discipline among Caucasian and African-American employees for sleeping on the job infractions, such as refusing to discipline transgressions of Caucasian employees. Subsequent to the Court's ruling, Defendant deposed Mr. Simon and Mr. Friloux.

Defendant contends that the subsequent deposition testimony of Mr. Simon and Mr. Friloux make clear that Plaintiff's claim of racial discrimination warrants the grant of summary judgment in favor of Defendant. Defendant claims that it has established a legitimate reason for termination, as sleeping on the job

3

infractions stand as a legitimate non-discriminatory reason for termination. Defendant also argues that Plaintiff fails to satisfy the Fifth Circuit requirement of producing evidence that similarly situated employees outside the protected class were treated more favorably.  Specifically, Plaintiff cannot show that the other employees were employed in the same position, under the same supervisor, worked at the same time, and have engaged in nearly identical misconduct.  Defendant also points out that Plaintiff's response to this motion for summary judgment is not accompanied by evidentiary support.

Plaintiff contends that Defendant re-urges the same issues raised in Defendant's first summary judgment motion.  Plaintiff further avers that the depositions of Mr. Tim Richard and Mr. Audie Friloux support Plaintiff's allegations.

### DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson*

*v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc*. 7 F.3d 1203, 1207 (5th Cir. 1993).

**B.   Race-Based Discrimination**

In a Title VII disparate treatment case, the plaintiff bears the burden of establishing intentional discrimination by the employer. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981). In the absence of direct evidence that discrimination has taken place, a plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *Id.* at 254. In order to establish a prima facie case of race-based discrimination under Title VII, a plaintiff must show that he: "(1) belongs to a protected group; (2) was qualified for his position; (3) was dismissed or suffered an adverse employment action; and (4)

was replaced with a similarly qualified person who was not a member of the employee's protected group" or (4) "in the case of disparate treatment, shows that others similarly situated were treated more favorably." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Preston v. Texas Dept. of Family and Protective Services*, 222 Fed.Appx. 353 ,358 (5th Cir. 2007). In order to rebut the inference, the employer must articulate a legitimate, non-discriminatory reason for the challenged action. *Burdine,* at 254. If the defendant has presented evidence of a legitimate motivation, the plaintiff retains the burden of persuasion regarding intentional discrimination. *Id*. at 256.

Plaintiff claims his employer discriminated against him by terminating him for sleeping on the job while treating others who were similarly situated more leniently. Defendant has established Defendant's infractions of sleeping on the job as a legitimate reason for termination, which shifts the burden back to Plaintiff to demonstrate intentional discrimination. Plaintiff must prove that each of the employer's stated reasons for termination serve as pre-text. *EEOC v. Texas Instruments, Inc.* 100 F.3d 1173, 1180 (5th Cir. 1996)(*quoting Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir. 1996). In order to demonstrate the presence of pre-text, Plaintiff alleges that Caucasian co-workers were "similarly situated," yet treated differently from Plaintiff under circumstances very similar to his own. Defendant highlights that

6

four Caucasian workers were caught sleeping and not terminated: Audie Friloux, Will Simon, Thad Torres, and Cathy Torres. Defendant highlights that these workers were not similarly situated because their infractions only involved single offenses for each of these individuals.  Plaintiff further states that the supervisors at Monsanto went out of their way to ask other workers about Plaintiff sleeping, but did not do this in the case of Caucasian workers.   In fact, the affidavit of Audie Friloux[1] reveals testimony that many of the individuals slept on the job on many more than one occasions, while supervisory personnel witnessed this.  Mr. Friloux even admits to not having been reprimanded for his actions.  In addition, the affidavit of Tim Simon also sets forth allegations that supervisor practices of waking up other sleeping employees rather than invoking disciplinary action were used.

As stated in this Court's prior order on this issue (Rec. Doc. No. 68), out of the prima facie elements for disparate treatment, Plaintiff has established that he belonged to a protected group, was arguably qualified for his position, and was dismissed or suffered an adverse employment action.  This Court found in response to Defendant's last Motion for Summary Judgment that the affidavits of Mr. Simon and Mr. Friloux introduced material factual

---

[1] Mr. Audie Friloux is a Caucasian worker cited once for sleeping on the job.

7

disputes regarding the fourth element of establishing that the misconduct for which Plaintiff was discharged was nearly identical to that engaged in by an employee of another race.[2]

Since the Court's ruling January 28, 2008 ruling on Defendant's first Motion for Summary Judgment (Rec. Doc. No. 68), Defendant has deposed Mr. Simon and Mr. Friloux. Defendants contend that the depositions of these individuals reveal that they have no personal knowledge about the circumstances surrounding other employees' alleged wrongdoing and what they attest to in their depositions does not amount to nearly identical misconduct. *See Preston v. Tex. Dep't of Family & Protective Servs.*, 222 F. App'x 353, 358-59 (5th Cir. 2007). This evidence does not point to the existence of an employee or employees who engaged in the totality of conduct leading to Plaintiff's termination, but whose like conduct went unpunished by supervisors. Instead, neither Mr. Simon nor Mr. Friloux demonstrates personal knowledge that Caucasian employees received more favorable treatment in the

---

[2] The Court previously ruled with regard to Defendant's prior Motion for Summary Judgment that Defendant's assertion the number of wrongful acts were different as illustrated through the single citations of the four Caucasian employees does not overcome the accusation supported by evidence that the supervisor refused to discipline transgressions of Caucasian employees. This Court distinguished *Nzeda v. Shell Oil Co.*, from the facts present in this case as *Nzeda* supports the proposition that **Plaintiff's** self-serving testimony was of a failure of the defendant administration to investigate other employees was nothing more than a conclusory allegation. 228 Fed. Appx. 375 (5th Cir. 2007) (emphasis added).

deposition testimony.

Mr. Simon, a former supervisor, recounted in his deposition how he had caught a Caucasian employee sleeping on the job **once** and wrote the employee up for said infraction.[3]  Mr. Simon also testified that in over more than two decades of work as a non-supervisor technician, he had observed other employees sleeping on the job, but he does not know whether or not they were disciplined for these infractions.  Finally, Mr. Simon does not know the names, race, dates, or number of times that any other employees may have been caught sleeping on the job.

Mr. Friloux, a former technician from early 1996 to 2004, testified in his deposition that he was caught sleeping on the job by Monsanto supervisor Jeff Swann while he was working in the GI Rail.  Mr. Friloux's testimony revealed that subsequent to having been caught, he was verbally counseled and presented with a hard copy write up, which he signed.  This write-up, which was placed in his personnel file, warned that further issues could result in termination.  His circumstances do not rise to the level of being "similarly situated" to Plaintiff, as he only had one infraction.  In addition, Mr. Friloux admitted that he did not know whether other employees were disciplined verbally or in writing by their supervisors for sleeping on the job.  In fact, both Mr. Simon and

---

[3] Mr. Simon cannot recall the name of the Caucasian employee referenced.

Mr. Friloux admitted that they could not identify a single incident where any specific Monsanto employee was caught sleeping on the job by a supervisor and was not disciplined.  Accordingly, their depositions fail to substantiate the claims previously made in their affidavits.

In order to demonstrate that the other employees were "similarly situated," Plaintiff must show that others outside the protected class were treated more favorably under "nearly identical circumstances."  *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991).  The "quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  *Edwards v. Grand Casinos of Miss., Inc.*, 145 F. App'x 946, 948 n.2 (5th Cir. 2005)(citing *Maniccia v. Brown*, 171 F.3d 1346, 1368 (11th Cir. 1999).  The depositions do not support the existence of other employees who had similarly engaged in the practice of sleeping on the job and not reprimanded, which would enable Plaintiff to establish that similarly situated employees were treated differently.[4]  However, the pleadings, depositions, answers to interrogatories and admissions on file, **together with the affidavits,** if any, must show that there is no genuine issue as to any material fact.  *Little v. Liquid Air Corp.*, 37 F.3d 1069,

---

[4] There is no evidentiary support that other similarly situated employees fell asleep on the job multiple times, as did Plaintiff, and went without being punished.

10

1075 (5th Cir. 1994). In examining the evidence presented thus far, the weight of the evidence favors Defendant, but discrepancies in the record require a weighing of the evidence at trial by the trier-of-fact, as there are material factual disputes.

Accordingly, **IT IS ORDERED** that the Defendant's Motion for Summary Judgment is **DENIED.**

New Orleans, Louisiana, this 29th day of July, 2008.

*[signature]*

IVAN L. R. LEMELLE

UNITED STATES DISTRICT JUDGE

11